UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

STEADFAST INSURANCE COMPANY,
for itself and as subrogee of
PAVARINI CONSTRUCTION CO., INC.,                    CASE NO.

      Plaintiff,

v.

G & E FLORIDA CONTRACTORS, INC., and
ACE AMERICAN INSURANCE COMPANY,

      Defendants.
_____/

### PLAINTIFF, STEADFAST INSURANCE COMPANY'S, COMPLAINT

Plaintiff, Steadfast Insurance Company ("Steadfast"), by and through its undersigned counsel, for itself and as the subrogee of Pavarini Construction Co., Inc. ("Pavarini") sues the Defendants, G & E Florida Contractors, Inc. ("G&E Contractors"), and ACE American Insurance Company ("ACE American"), and alleges:

### Jurisdiction and Venue

1.    The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, and this action is between citizens of different states.  Additionally, Steadfast seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and/or Chapter 86, Fla. Stat., relating to the respective insurance coverage obligations of Steadfast and ACE

American.  The insurance coverage in dispute also exceeds the sum of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.      Steadfast is a Delaware corporation engaged in the insurance business with a statutory home office located at 32 Loockerman Square, Dover, Delaware 19904, and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. Steadfast operates as a qualified surplus lines insurer in Florida.

3.      G & E Contractors was a Florida corporation whose principal place of business was in Fort Lauderdale, Florida.  Upon information and belief, G&E Contractors was voluntarily dissolved.

4.      Upon information and belief, ACE American is a Pennsylvania corporation engaged in the insurance business with a principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.  ACE American is registered to conduct business in the State of Florida.

5.      Venue is proper in this Court because a substantial part of the events and omissions giving rise to the claims occurred in Miami, Florida where the construction project that is the subject of the action is situated.

## **Background**

6.      On or about August 1, 2002, Pavarini was hired as the General Contractor of the Jade Residences at Brickell Bay Condominium Project in Miami, Florida ("Project").  The Project includes a 48-story tower with 326 condominium units and related improvements.

7.      Pavarini hired multiple subcontractors to perform work and supply materials necessary for the Project's construction.  Pavarini entered into a subcontract agreement with G&E Contractors ("Subcontract Agreement") whereby G&E Contractors agreed to perform concrete structural work, formwork, rebar installation, concrete placement, and post-tensioning on the Project, including the concrete installation and related work to construct the Project's exterior balconies.  A copy of the relevant portions of the Subcontract Agreement is attached hereto as Exhibit "A."

8.      ACE American issued a Contractor Controlled Insurance Program for the Project, Policy No. HDO G18401526 ("CCIP") naming Pavarini as the primary named insured and Pavarini's subcontractors, including G&E Contractors, as additional insureds. A copy of the CCIP is attached as Exhibit "B."

9.      The CCIP provides: "[Pavarini is] the sole agent of the Insured(s) with respect to premium payment, policy termination, <u>claims payments</u>, claims information, claim settlement agreements, and, participation and/or dividend provision of this policy - if applicable."  CCIP, Endorsement 2 (emphasis added).

10.     Steadfast also issued to Pavarini a Subguard Policy, Policy No. SGD 930629-00 ("Subguard Policy"), that provided coverage for certain claims associated with the Project's construction.  A copy of the relevant portions of the Subguard Policy is attached as Exhibit "C."  As more fully set forth in the Subguard Policy, Steadfast agreed to indemnify Pavarini as follows:

> Subject to the Limits of Insurance stated in Item 3. of the Declarations, we will indemnify you for Loss after application of the Deductible and Co-payment amounts as stated in Items 4. & 5. of the Declarations and subject

3

to the Retention Aggregate stated in Item 6. of the Declarations, but only to the extent of a **Default of performance** by your **Subcontractor/Supplier** as respects any **Covered subcontract or purchase order agreement.**

Subguard Policy, ¶ I (emphasis in original).

11.     G&E Contractor's Subcontract Agreement was a covered subcontract under the Subguard Policy.

12.     After Pavarini completed the Project, Jade Residences at Brickell Bay Condominium Association, Inc. ("Association"), a non-profit condominium association, assumed control of the Project and its common elements.

13.     After assuming control of the Project, the Association alleged that it identified numerous construction defects and deficiencies at the Project, including exterior balcony defects and deficiencies.

14.     On or about March 19, 2010, the Association filed Case No. 10-17701-CA-23 in the Circuit Court of Miami-Dade County, Florida ("Lawsuit"), to recover from Pavarini and others the costs to remediate the Project's alleged defects and deficiencies, among other damages.

15.     A significant portion of the Association's alleged damages in the Lawsuit related to defects and deficiencies in G & E Contractor's work on the Project's exterior balconies.

16.     On or about January 11, 2011, Pavarini and the Association entered into a settlement agreement ("Balcony Settlement Agreement") whereby Pavarini agreed to perform extensive repairs to the Project's balconies to address various alleged defects and deficiencies.

17.     Pavarini incurred significant costs to inspect and repair the Project's balconies pursuant to the Balcony Settlement Agreement.  Upon information and belief, Pavarini will continue to incur costs for such work until it satisfies its repair obligations under the Balcony Settlement Agreement.

18.     Upon information and belief, Pavarini submitted to ACE American CCIP claims and demands relating to the Project, the Association's Lawsuit, and Pavarini's obligations under the Balcony Settlement Agreement.

19.     ACE American denied Pavarini's CCIP claim(s) and demand(s) relating to Pavarini's obligations under the Balcony Settlement Agreement.

20.     Pavarini also asserted a claim under Steadfast's Subguard Policy with respect to G&E Contractors' Subcontract Agreement default, whereby Pavarini demanded that Steadfast pay certain costs to repair the Project balconies.

21.     To date, Steadfast has paid an amount far exceeding the Court's $75,000.00 jurisdictional limit relating to Pavarini's Subguard Policy claim.  Upon information and belief, a significant portion of Steadfast's payments arise from defects and deficiencies in G & E Contractors' work.

22.     The Subguard Policy states:

In the event of any payment by [Steadfast] under the [Subguard Policy], [Steadfast] shall be subrogated to the extent of such payment to all of [Pavarini's] rights of recovery or other remedies against any persons or organizations with respect to such payment.

Subguard Policy, Section VIII.

23.    Pursuant to Section VIII of the Subguard Policy and by operation of law, when Steadfast paid Pavarini's Subguard Policy claims, Pavarini's claims and rights of recovery against parties liable for such claims were transferred to Steadfast, to the extent of Steadfast's payments.

24.    Given that ACE American's CCIP provides the primary layer of insurance coverage for Pavarini's enrolled Project subcontractors, including G&E Contractors, ACE American is primarily responsible for certain damages that resulted from G&E Contractors' work on the Project's balconies.

25.    By letters dated September 25, 2012 and August 19, 2014, Steadfast demanded that ACE American reimburse Steadfast for its payments to date for CCIP insured damages, including the resulting property damage G&E Contractors caused to the balconies, and further, that ACE American acknowledge and comply with its primary coverage obligations to fund any additional repairs of CCIP insured damages G&E Contractors caused to the Project's balconies.

26.    ACE American did not respond to Steadfast's demands and has not honored its obligations under the CCIP.

27.    Steadfast has retained the law firm of Mills Paskert Divers, P.A. to represent it in this action, and has agreed to pay its attorneys a reasonable fee for their services.

28.    All conditions precedent to this action have been performed, have been waived or excused, or otherwise have occurred.

## Claims Against G&E Contractors

## COUNT 1 - BREACH OF CONTRACT
### (G&E Contractors)

29.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

30.     This is an action against G&E Contractors for breach of contract.

31.     Pavarini entered into the Subcontract Agreement with G&E Contractors whereby G&E Contractors agreed to:

>  . . . perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and all other things necessary for **Tower Concrete Structure & (3) Tower Cranes** (hereinafter called the "Work") for and at the **Jade Residences at Brickell Bay** (hereinafter called the "Project"), located at **1331 Brickell Bay Drive, Miami, Florida 33131** (hereinafter called the "Premises"), as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by **Revuelta Vega & Leon P.A., 2560 SW 27th Avenue, Miami, Florida 33133** (hereinafter called the "Architect") and with the terms and provisions of the General Contract (hereinafter called the "General Contract") between the Contractor and **Jade at Brickell Bay Associate, Ltd., 501 Brickell Key Dr., Suite 600, Miami, Florida 33131** (hereinafter called the "Owner") and in strict accordance with the Additional Provisions, page(s) annexed hereto and Exhibit A: Document List (32 pages), Exhibit B: Scope of Work & Special Conditions (25 pages), Exhibit C: Insurance Requirements (85 pages), Exhibit D: Hazard Communications (1 page), Exhibit E: Project Schedule (15 pages), Exhibit F: "City of Miami Noise Ordinance" (5 pages), Exhibit G: Florida Condominium Act (4 pages), Exhibit H: Safety Performance Guidelines (46 pages) and Exhibit I: Site Safety Program: (120 pages).

G&E Contractors Subcontract, Article I.

32.     Pursuant to the G&E Contractors Subcontract, G&E Contractors agreed that, among other things:[1]

---

[1]   The Subcontract refers to Pavarini as the "Contractor" and G&E Contractors as the "Subcontractor."

ARTICLE IV . . . The final payment shall be due within 60 days after completion and acceptance of the Work by the Contractor and the Architect, provided first, however, that (1) the Contractor shall have received final payment therefor from the Owner, (2) the Subcontractor shall have furnished evidence satisfactory to the Contractor that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work and (3) the Subcontractor shall have executed and delivered in a form satisfactory to the Contractor a General Release running to and in favor of the Contractor and the Owner. Should there prove to be any such claim, obligation or lien after final payment is made, the Subcontractor shall refund to the Contractor all monies that the Contractor and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith . . . .

ARTICLE X.  The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by the Contractor, the Architect and their authorized representatives in the field, at shops, or at any other place where materials or equipment for the Work are in the course of preparation, manufacture, treatment or storage[.]  The Subcontractor shall, within twenty-four (24) hours after receiving written notice from the Contractor to that effect, proceed to take down all portions of the Work and remove from the premises all materials whether worked or unworked, which the Architect or the Contractor shall condemn as unsound, defective or improper or as in any way failing to conform to this Agreement or the Plans, Specifications or other Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, defective, improper or nonconforming work or materials or by the taking down, removal or replacement thereof.

ARTICLE XI.  Should the Subcontractor at any time refuse or neglect to supply a sufficiency of skilled workmen or materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence, or cause by any act or omission the stoppage or delay of or interference with or damage to the work of the Contractor or of any other contractors or subcontractors on the Project, or fail in the performance of any of the terms and provisions of this Agreement or of the other Contract Documents, or should the Architect determine that the Work or any portion thereof is not being performed in accordance with the Contract Documents,

or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontractor become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge insolvency, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, the Contractor shall have the right, in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work, enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools, appliances and other items thereon, all of which the Subcontractor hereby transfers, assigns and sets over to the Contractor for such purpose, and to employ any person or persons to complete the Work and provide all the labor, services, materials, equipment and other items required therefor. In case of such termination of the employment of the Subcontractor, the Subcontractor shall, not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of the Contractor and the Architect and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by the Contractor in completing the Work, such excess shall be paid by the Contractor to the Subcontractor; but if such cost and expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to the Contractor. Such cost and expense shall include, not only the cost of completing the Work to the satisfaction of the Contractor and the Architect and of performing and furnishing all labor, services, materials, equipment, and other items required therefor, but also all losses, damages, costs and expenses, including legal fees and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default . . . .

ARTICLE XXI.  The Subcontractor hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents . . . Without limitation by the foregoing, the Subcontractor shall pay in addition for all damage to the Project resulting from defects in the Work and all costs and expenses necessary to correct, remove, replace and/or repair the Work and any other

work or property which may be damaged in correcting, removing, replacing
or repairing the Work

G&E Contractors Subcontract, Articles IV, X, XI, and XXI.

33.     The Association alleged that multiple defects and deficiencies existed in the construction of the Project, including defects and deficiencies in G&E Contractors' scope of work, including the exterior balconies.

34.     Pavarini notified G&E Contractors of the Association's claims and demanded that G&E Contractors comply with its contractual obligations to Pavarini.

35.     G&E Contractors breached the Subcontract Agreement by failing to properly perform its work pursuant to the Subcontract Agreement, the Contract Documents, and the Building Code, and by failing to cure the defects and deficiencies in its work after receiving notice from Pavarini.

36.     Pavarini fully performed its obligations under the Subcontract Agreement.

37.     Pursuant to the Balcony Settlement Agreement, Pavarini settled the Association's claims against Pavarini, including the claims relating to the work or materials G&E Contractors supplied for the construction of the Project.

38.     Pavarini has been damaged as a direct and proximate result of G&E Contractors' breach of the Subcontract Agreement because it incurred substantial costs to repair defects and deficiencies in G&E Contractors' scope of work, including its obligations under the Balcony Settlement Agreement, and it was required to defend itself against the Association's lawsuit.

39.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against G&E Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

40.     As Pavarini's subrogee, Steadfast is entitled to prosecute Pavarini's causes of action against G&E Contractors.

41.     Steadfast has retained the services of the undersigned attorneys in this action, and is obligated to pay the undersigned a reasonable fee for their services.

42.     G&E Contractors is responsible for Steadfast's attorneys' fees, costs, and expenses pursuant to the Subcontract Agreement, including Articles IV, XI, and XXIII.

WHEREFORE, Steadfast demands judgment against G&E Contractors for damages, attorneys' fees, costs, and pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 2 – CONTRACTUAL INDEMNITY
### (G&E Contractors)

43.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

44.     This is an action against G&E Contractors for contractual indemnity.

45.     The G&E Contractors Subcontract requires G&E Contractors to indemnify Pavarini as follows:

> ARTICLE IV.  If any claim or lien is made or filed with or against the Contractor, the Owner, the Project or the Premises by any person claiming that the Subcontractor or any subcontractor or other person under it has failed to make payment for any labor, services, materials, equipment, taxes

or other items or obligations furnished or incurred for or in connection with the Work or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, the Contractor or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or other person under it causes damage to the Work or to any other work on the Project, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Agreement, the Contractor shall have the right to retain from any payment then due or thereafter to become due and amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate the Contractor and the Owner for and indemnify them against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith. The Contractor shall have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes.  If the amount retained is insufficient therefor, the Subcontractor shall be liable for the difference and pay the same to the Contractor . . . .

ARTICLE XXIII.  The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon the Contractor's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of the Contractor, the Subcontractor agrees to indemnify and save harmless the Contractor, its officers, agents, servants and employees front and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that the Contractor, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of the Contractor, its officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against the Contractor, its officers, agents, servants or employees upon or by reason of such claims and to pay on behalf of the Contractor, its officers, agents, servants and employees, upon its demand the amount of

12

any judgment that may be entered against the Contractor, its officers, agents, servants or employees in any such action.  In the event that any such claims, loss, cost, expense, liability, damage or injury arise or are made, asserted or threatened against the Contractor, its officers, agents, servants or employees, the Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in its judgment to protect and indemnify it and its officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability, damage or injury, including legal fees and disbursements, or the Contractor[s] in its discretion, may require the Subcontractor to furnish a surety bond satisfactory to the Contractor guaranteeing such protection, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefor.

G&E Contractors Subcontract, Articles IV, XXIII.

46.     Pavarini notified G&E Contractors of the Association's claims and lawsuit and demanded that G&E Contractors honor its obligations to indemnify Pavarini from the Association's claims relating to G&E Contractors' scope of work on the Project.

47.     G&E Contractors breached the Subcontract Agreement by failing to indemnify Pavarini from and against the Association's claims.

48.     As a result of G&E Contractors' breach, Pavarini has been damaged. Pavarini was required to defend itself against the Association's lawsuit and Pavarini has been required to pay the Association to resolve claims relating to G&E Contractors' scope of work on the Project, including Pavarini's obligations under the Balcony Settlement Agreement.

49.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against G&E Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

50.     As Pavarini's subrogee, Steadfast is entitled to prosecute Pavarini's causes of action against G&E Contractors.

51.     Steadfast has retained the services of the undersigned attorneys in this action, and is obligated to pay the undersigned a reasonable fee for their services.

52.     G&E Contractors is responsible for Steadfast's attorneys' fees, costs, and expenses pursuant to the Subcontract Agreement, including Articles IV, XI, and XXIII.

WHEREFORE, Steadfast demands judgment against G&E Contractors for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

### COUNT 3 – COMMON LAW INDEMNITY
### (G&E Contractors)

53.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

54.     This is an action for common law indemnity against G&E Contractors.

55.     Any liability Pavarini had or has to the Association, the Project unit owners ("Unit Owners"), or any other party, relating to G&E Contractors' scope of work on the Project is strictly constructive, technical, vicarious or derivative, and results from G&E Contractors' breaches of contract, breaches of warranties, negligent acts, or other wrongful conduct.

56.     Pavarini is without fault or active negligence in causing the Association's or the Unit Owners' damages relating to G&E Contractors' scope of work on the Project.

14

57.     G&E Contractors is wholly at fault for the damages Pavarini has incurred and will incur in the future relating to G&E Contractors' scope of work on the Project.

58.     Pavarini had a special relationship with G&E Contractors because G&E Contractors served as a subcontractor on the Project.

59.     Pursuant to the Subguard Policy, Steadfast owns and hold all of Pavarini's rights and claims against G&E Contractors relating to Steadfast's payments to repair alleged defects and deficiencies at the Project, investigation costs, and legal fees and costs.

60.     As Pavarini's subrogee, Steadfast is entitled to prosecute Pavarini's causes of action against G&E Contractors.

61.     To the extent Steadfast does not recover all damages it pays for investigation costs and repairs made pursuant to the Balcony Settlement Agreement pursuant to Counts 1 and 2, it does not have an adequate remedy at law against G&E Contractors.

62.     G&E Contractors is responsible for Steadfast's attorneys' fees, costs, and expenses as a matter of law as its damages and pursuant to the Subcontract Agreement, including Articles IV, XI, and XXIII.

WHEREFORE, Steadfast demands judgment against G&E Contractors for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 4 – NEGLIGENCE
### (G&E Contractors)

63.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

64.     This is an action for negligence against G&E Contractors.

65.     As a supplier and installer of balcony concrete and related work and accessories for the Project, G&E Contractors owed Pavarini a duty of reasonable care to perform its work: (a) in a manner that did not create an unreasonable risk of harm or damage to the Project, (b) in compliance with the Building Code and other legal requirements applicable to the Project's construction; and/or (c) otherwise act in a reasonable fashion to avoid damaging Pavarini, others, and the Project.

66.     The Association alleged that multiple defects and deficiencies existed in the construction of the Project, including defects and deficiencies in the Project's balconies and resulting damage to other building components.

67.     G&E Contractors acted negligently and violated its duties to Pavarini by failing to exercise reasonable care to perform its work: (a) in a manner that did not create an unreasonable risk of harm or damage to the Project, (b) in compliance with the code and other legal requirements applicable to the Project's construction, and/or (c) to otherwise act in a reasonable fashion to avoid damaging Pavarini, others, and the Project.

68.     Given the scope of its work on the Project, G&E Contractors knew or should have known, and could foresee, that if it negligently performed its work it would

cause harm and damages to Pavarini, the Association, the Unit Owners, and the personal property located at the Project.

69.     The Association suffered resulting damages flowing from G&E Contractors' work on the Project and it sought to recover such damages from Pavarini.

70.     Pavarini has suffered damages as a direct and proximate result of G&E Contractors' negligent conduct. Pavarini has been required to defend itself against the Association's lawsuit and Pavarini has been required to pay the Association to resolve certain claims relating to G&E Contractors' scope of work on the Project, including the obligations under the Balcony Settlement Agreement.

71.     G&E Contractors knew or should have known that if it acted negligently, Pavarini would suffer the damages at issue in this matter.

72.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against G&E Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

73.     As Pavarini's subrogee, Steadfast is entitled to prosecute Pavarini's causes of action against G&E Contractors.

74.     Steadfast has retained the services of the undersigned attorneys in this action, and is obligated to pay the undersigned a reasonable fee for their services.

75.     G&E Contractors is responsible for Steadfast's attorneys' fees, costs, and expenses pursuant to the Subcontract Agreement, including Articles IV, XI, and XXIII.

WHEREFORE, Steadfast demands judgment against G&E Contractors for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 5 – EQUITABLE SUBROGATION
### (G&E Contractors)

76.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

77.     To the extent Steadfast does not recover all damages relating to G&E Contractors' scope of work on the Project pursuant to Counts 1 through 4, this Count seeks alternative relief pursuant to Rule 8(d)(2), Fed. R. Civ. P.

78.     Given that Pavarini did not perform the balcony and related work that the Association alleges is defective, Pavarini is not primarily liable for the Association's damages.

79.     G&E Contractors is liable for the Association's damages relating to work within the scope of the Subcontract Agreement.

80.     Given Pavarini's Balcony Settlement Agreement with the Association, Pavarini was obligated to perform and pay for the balcony investigation and repair costs more fully described therein to protect its own interests.

81.     Since the Association sued Pavarini, Pavarini did not act as a volunteer by performing and paying for the balcony investigation and repair costs required by the Balcony Settlement Agreement.

82.     Pursuant to its secondary liability under the Subguard Policy, when G&E Contractors refused to honor its obligations to repair the Project's balconies and the related damages, Steadfast reimbursed Pavarini for certain charges Pavarini incurred to make such repairs.

83.     Steadfast is equitably subrogated to the Association's rights and claims and is entitled to recover from G&E Contractors all payments to Pavarini and others that Steadfast has made and is required to make in the future with respect to defects and deficiencies in G&E Contractors' scope of work on the Project.

84.     This subrogation of rights will not work any injustice to the rights of any third parties.

85.     To the extent the Association was entitled to recover attorneys' fees for its claim against G&E Contractors, Steadfast is entitled to recover attorneys' fees for the Association claims Steadfast prosecutes via subrogation.

WHEREFORE, Steadfast demands judgment against G&E Contractors for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 6 - DECLARATORY ACTION
### (ACE American)

86.     Steadfast realleges and incorporates paragraphs 1 through 28, as though fully set forth herein.

87.     This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201 and/or Chapter 86, Fla. Stat.

88.     Steadfast and ACE American issued insurance policies to their common insured, Pavarini, relating to the Project.

89.     Under the CCIP, ACE American is primarily responsible for certain damage to the Project resulting from G&E Contractors' work on the Project's balconies.

90.     Steadfast believes its obligations under the Subguard Policy to pay for costs and damages associated with the balcony repairs are secondary to ACE American's obligations to Pavarini under the CCIP, especially with respect to resulting damage from G&E Contractors' work.  The Subguard Policy states:

> This insurance shall be excess of any other valid, and collectible insurance available to [Pavarini], whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent, or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of insurance provided in this Policy.

Subguard Policy, ¶ X(F).

91.     ACE American is refusing to honor its obligations to Pavarini under the CCIP, and as a consequence, Steadfast has been required to pay balcony repair costs and expenses for which ACE American is primarily liable.

92.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's claims and rights against ACE American pursuant to the CCIP relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

93.     As Pavarini's subrogee, Steadfast seeks to enforce ACE American's CCIP obligations to pay for damages G&E Contractors caused to the Project, including resulting damages.

94.    A bona fide dispute and adverse interest exists between Steadfast, as Pavarini's subrogee, and ACE American concerning the primary and secondary insurance coverage obligations for the Project's balcony repair costs and expenses.

95.    There is a present, practical need for the Court's declaration regarding Steadfast's and ACE American's respective coverage obligations because the carriers' common insured, Pavarini, may continue to perform repairs and has submitted and may continue to submit to Steadfast insurance claims for the balcony repairs.

96.    Steadfast is in doubt regarding its obligations under the Subguard Policy and ACE American's obligations under the CCIP.  Steadfast has an actual, present, and practical need to have the doubt removed because otherwise it will unnecessarily incur significant costs associated with Pavarini's Subguard Policy claims.

97.    Steadfast, as Pavarini's subrogee, seeks a declaration that ACE American is primarily liable under the CCIP to pay for damage G&E Contractors caused to the Project's balconies and related building components, including resulting damages.

WHEREFORE, Steadfast requests that the Court grant the declaratory relief sought herein against ACE American and grant Steadfast such further relief as this Court deems proper, including costs.

## COUNT 7 – BREACH OF INSURANCE CONTRACT
## VIA CONVENTIONAL SUBROGATION
### (ACE American)

98.    Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

99.   Pursuant to the CCIP, ACE American was obligated to indemnify Pavarini for damages G&E Contractors caused to the Project.  The CCIP states:

> We [Ace American] will pay those sums that the insured [Pavarini] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
>
> (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

CCIP, Section I(A)(1)(a).

100.   Pavarini and G&E Contractors are insureds under the CCIP, and Pavarini is the  primary named insured.

101.   Pavarini made multiple claims and demands to ACE American under the CCIP seeking ACE American to pay for the damage G&E Contractors caused to the Project.

102.   ACE American breached the CCIP by denying coverage for such damages.

103.   Pavarini was damaged as a result of ACE American's breach of the CCIP as it incurred investigative and repair costs that ACE American should have paid, including its obligations under the Balcony Settlement Agreement.

104.   Further, Pavarini was required to prepare and submit a claim under the Subguard Policy for costs ACE American should have paid under the CCIP.

105.     Steadfast paid certain costs pursuant to Pavarini's Subguard Policy claim. Upon information and belief, a significant portion of the costs Steadfast paid resulted from G&E Contractors' work.

106.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against ACE Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.  Subguard Policy, Section VIII.

107.      To the extent Pavarini is entitled to recover attorneys' fees for its claims against ACE American, including pursuant to Section 627.428, Fla. Stat., Steadfast is entitled to recover attorneys' fees for the Pavarini claims Steadfast prosecutes via subrogation.

WHEREFORE, Steadfast demands judgment against ACE American for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 8 – EQUITABLE SUBROGATION
### (ACE American)

108.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

109.     To the extent that Steadfast is not granted complete relief pursuant to Counts 1 through 7, this count seeks alternative relief pursuant to Rule 8(d)(2), Fed. R. Civ. P.

110.    Steadfast and ACE American issued insurance policies to their common insured, Pavarini, relating to the Project.

111.    Under the CCIP, ACE American is primarily responsible for certain damages to the Project's balconies flowing from G&E Contractors' work.

112.    Upon information and belief, Steadfast's obligations under the Subguard Policy to pay for costs and damages associated with the balcony repairs are secondary to ACE American's obligations under the CCIP, especially with respect to resulting damage from G&E Contractors' work.

113.    ACE American is refusing to honor its obligations under the CCIP, and as a consequence, Steadfast has been required to pay balcony repair costs and expenses for which ACE American is primarily liable, including obligations under the Balcony Settlement Agreement.

114.    Pavarini may continue to perform repairs and has submitted and may continue to submit insurance claims to Steadfast for the balcony repairs and related costs.

115.    Although Steadfast believes it was secondarily liable for certain balcony investigation and repair costs under the Subguard Policy, Steadfast was obligated to pay the associated investigation and repair costs to protect its own interests.

116.    Because of its obligations under the Subguard Policy, Steadfast did not act as a volunteer by paying the balcony investigation and repair costs.

117.    Steadfast is equitably subrogated to Pavarini's rights and claims against ACE American and is entitled to recover from ACE American all investigative and repair costs that the CCIP covers.

118.   This subrogation of rights will not work any injustice to the rights of any third parties.

119.   To the extent Steadfast does not fully recover its damages pursuant to Counts 1 through 7, it does not have an adequate remedy at law.

120.   To the extent Pavarini is entitled to recover attorneys' fees for its claims against ACE American, including pursuant to Section 627.428, Fla. Stat., Steadfast is entitled to recover attorneys' fees for the Pavarini claims Steadfast prosecutes via subrogation.

WHEREFORE, Steadfast demands judgment against ACE American for damages, attorneys' fees, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 9 – EQUITABLE CONTRIBUTION
### (ACE American)

121.   Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

122.   To the extent that Steadfast is not granted complete relief pursuant to Counts 1 through 8, this count seeks alternative relief pursuant to Rule 8(d)(2), Fed. R. Civ. P.

123.   Steadfast and ACE American issued insurance policies to their common insured, Pavarini, relating to the Project.

124.   Under the CCIP, ACE American is primarily responsible for resulting damage to the Project's balconies flowing from G&E Contractors' work.

125.   Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against G&E Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

126.   Upon information and belief, Steadfast's obligations under the Subguard Policy to pay for costs and damages associated with the balcony repairs are secondary to ACE American's obligations under the CCIP, especially with respect to resulting damage from G&E Contractors' work.

127.   ACE American is refusing to honor its obligations under the CCIP, and as a consequence, Steadfast has been required to pay balcony repair costs and expenses for which ACE American is primarily liable, including costs associated with Pavarini's obligations under the Balcony Settlement Agreement.

128.   Pavarini may continue to perform repairs and has submitted and may continue to submit insurance claims to Steadfast for the balcony repairs and related costs.

129.   To the extent Steadfast does not fully recover its damages pursuant to Counts 1 through 8, it does not have an adequate remedy at law.

130.   To the extent ACE American is obligated under the CCIP to pay for damages G&E Contractors caused, principles of equity require ACE American to contribute to the costs Steadfast has incurred related to the balcony investigation and repair costs.

WHEREFORE, Steadfast demands judgment against ACE American for damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT 10 – UNJUST ENRICHMENT
### (ACE American)

131.     Steadfast re-alleges and incorporates by reference the allegations in Paragraphs 1-28 as if fully set forth herein.

132.     To the extent that Steadfast is not granted complete relief pursuant to Counts 1 through 9, this count seeks alternative relief pursuant to Rule 8(d)(2), Fed. R. Civ. P.

133.     Pursuant to the Subguard Policy, Steadfast owns and holds all of Pavarini's rights and claims against G&E Contractors relating to the amounts Steadfast paid to correct defects and deficiencies at the Project, investigation costs, and legal fees and costs arising from or relating to G&E Contractors' work.

134.     To the extent Steadfast does not recover all damages it pays for investigation costs and repairs made pursuant to the Balcony Settlement Agreement pursuant to Counts 1 through 9, it does not have an adequate remedy at law against ACE American.

135.     Steadfast conferred a substantial and material benefit on ACE American by paying for balcony investigation and repair costs that ACE American was primarily obligated to pay under the CCIP.

136.    Upon information and belief, ACE American knew or should have known that if it denied coverage for the balcony investigation and repair costs that ACE American was obligated to pay under the CCIP, Steadfast would be required to pay certain costs as Pavarini's co-insurer.

137.    Upon information and belief, ACE American knowingly and voluntarily accepted the benefit of Steadfast's payments to investigate and repair damage ACE American's insured, G&E Contractors, caused to the Project.

138.    ACE American received a direct benefit from Steadfast's payments to Pavarini because otherwise ACE American would have been required to pay Pavarini damages pursuant to its CCIP obligations.

139.    Steadfast is entitled to recover from ACE American the reasonable value of the payments Steadfast made to Pavarini related to damages G&E Contractors caused to the Project and which ACE American otherwise would have been required to pay under the CCIP.

140.    Under the circumstances, it is inequitable for ACE American to retain the benefit of Steadfast's payments without paying the reasonable value thereof.

WHEREFORE, Steadfast demands judgment against ACE American for its damages, interest, court costs, and such further relief as this Court deems just and proper.

Dated:  October 3, 2014.


/s/ Jeffrey M. Paskert
Jeffrey M. Paskert, Esq.
Florida Bar No. 846041
Email:  jpaskert@mpdlegal.com
Secondary:  jegusquiza@mpdlegal.com
Adam C. King, Esq.
Florida Bar No. 156892
Email:  aking@mpdlegal.com
Secondary:  lfabiano@mpdlegal.com
MILLS PASKERT DIVERS P.A.
100 N. Tampa Street, Suite 3700
Tampa, Florida 33602
(813) 229-3500 – Telephone
(813) 229-3502 – Facsimile
*Attorneys for Steadfast Insurance Company*